# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 09-226 (1) (JRT/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION ON SENTENCING** |
| CURTIS LAVELLE HARRIS, | |
| Defendant. | |

Steven L. Schleicher, Assistant United States Attorney,, **OFFICE OF THE UNTIED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Douglas Olson, Assistant Federal Defender, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

This memorandum supplements the findings and conclusions rendered by the Court during the sentencing hearing for Curtis Lavelle Harris on March 3, 2011. Specifically, this memorandum addresses the applicability of the Fair Sentencing Act of 2010 ("FSA") to Harris' sentence. The Court concludes that the FSA, intended to remedy sentencing disparities, applies to defendants like Harris who were sentenced subsequent to the FSA's enactment, regardless of when the underlying criminal actions were committed.

## BACKGROUND

On November 24, 2009, Harris pled guilty to conspiracy to distribute over 50 grams of crack cocaine. (Docket No. 63.) At the time of his plea, Harris would have

been subject to a ten-year mandatory minimum sentence.  21 U.S.C. § 841(b)(1)(A)(iii) (2009).  Harris, however, was sentenced on March 3, 2011, after the enactment of the FSA on August 3, 2010.  The FSA increased the quantity of crack cocaine that triggers a sentence of five to forty years from 5 grams to 28 grams; it increased the quantity that triggers a sentence of ten years to life from 50 grams to 280 grams.  Pub. L. 111-220, 124 Stat. 2372 (codified at 21 U.S.C. § 841 (2010)).  Harris' Presentence Investigation Report, the factual findings of which the Court adopted at the sentencing hearing, determined that Harris is responsible for 23.9 grams of crack cocaine.  Under the current, post-FSA guidelines, Harris would be subject to a five-year mandatory minimum sentence.

Through the FSA, Congress empowered the United States Sentencing Guidelines Commission ("the Sentencing Commission") to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law" as "soon as practicable, and in any event not later than 90 days after the date of enactment of this Act."  124 Stat. 2372, 2374.  Accordingly, on October 27, 2010, the Sentencing Commission adopted emergency amendments to conform the guidelines to the FSA.  75 Fed. Reg. 66188 (Oct. 27, 2010).

By letter of November 17, 2010, Senators Dick Durbin and Patrick J. Leahy, lead sponsors of the FSA, urged the United States Attorney General to instruct federal prosecutors to seek sentences consistent with the FSA's reduced mandatory minimums for defendants not yet sentenced, including those like Harris whose conduct predates the legislation's enactment.  *United States v. Holland*, No. 8:10CR48, 2011 WL 98313, at *5

(D. Neb. Jan. 10, 2011) (citing Letter from Senators Dick Durbin and Patrick Leahy to Eric Holder, U.S. Attorney General (Nov. 17, 2010)) (sentencing the defendant based on the FSA after enactment even though the crimes were committed pre-enactment).[1] The senators cited Congress' "sense of urgency" motivating the FSA's provision requiring the Sentencing Commission to promulgate emergency amendments, and noted that "[e]very day that passes without taking action to solve this problem is another day that people are being sentenced under a law that virtually everyone agrees is unjust." *Id.* (alteration original).

Despite these directives, the government urges the Court to apply the version of § 841 in effect on the date Curtis committed his crime, citing the general federal savings statute, 1 U.S.C. § 109 ("the savings statute"), and the lack of any explicit provision in the FSA mandating its retroactive application. Curtis argues that he is subject only to the five-year mandatory minimum contained in the version of § 841 in place on the date of his sentencing.

## ANALYSIS

The government argues that because Congress did not expressly make the FSA retroactive, the savings statute requires its application only to criminal conduct occurring after the August 3, 2010 enactment date. The savings statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as

---

[1] The Senators' letter is available at http://sentencing.typepad.com/files/fair-sentencing-act-ag-holder-letter-111710.pdf).

> still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. However, it has long been established that this provision "cannot justify a disregard of the will of Congress as manifested, either expressly or by necessary implication, in a subsequent enactment." *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465 (1908). While the FSA does not expressly state its applicability to cases involving yet-to-be-sentenced defendants whose conduct predated the FSA's enactment, it is clear that Congress intended defendants such as Harris to be sentenced pursuant to the post-enactment version of § 841.

First, Congress' intent is manifest in the FSA's directive to the Sentencing Commission to promulgate emergency amendments to the guidelines compatible with the FSA. As another district court reasoned, the new guidelines cannot conform to the law as expressly mandated by Congress in the FSA "if they are based upon statutory minimums that cannot be effective to a host of sentences over the next five years until the statute of limitations runs on pre-August 3, 2010 conduct." *United States v. Douglas*, No. 09-202-P-H, 2010 WL 4260221, at *4 (D. Me. Oct. 27, 2010). Moreover, the Court is required to apply the version of the guidelines in place at the time of a defendant's sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii)). Defendants will therefore benefit from the revised post-FSA guidelines' base offense levels for drug quantities. "It would be . . . strange . . . to have these new amended Guidelines go into effect while the old and therefore inconsistent statutory minimums continue." *Douglas*, 2010 WL 4260221, at *5.

In addition, as Chief Judge Bataillon recently observed in concluding that the FSA applies to post-enactment sentencing regardless of when the underlying conduct

occurred, "[d]evining congressional intent in these circumstances is not an arcane inquiry into antiquated archives." *Holland*, 2011 WL 98313, at *10. The legislative history of the FSA reveals that it was passed in response to Congress' belief that the 100-to-1 sentencing disparity between crack and cocaine was devoid of evidentiary support, served no legislative purpose, and resulted in a racially discriminatory impact in sentencing. *See, e.g.*, 155 Cong. Rec. S10488-01, S10492, 2009 WL 3319524 (daily ed. Oct. 15, 2009) (statement of Sen. Jeff Sessions that "we are not able to defend the sentences that are required to be imposed under the law today"). The United States Department of Justice consistently, and publicly, advocated for the FSA's passage, arguing that the crack/cocaine disparity was unjustifiable. *Holland*, 2011 WL 98313, at *6; *id.* at *4 (noting that "a bill that would have specifically provided that [the FSA] would not take effect for 180 days and would have had no retroactive application was earlier rejected) (citing H.R. 4545, 110th Cong. (1st Sess. 2007)). Congress' intent to remedy unjustifiable sentencing disparities through the FSA is incongruous with the continuing imposition of such sentences. In their letter to the Attorney General, two of the FSA's sponsors recently characterized the position of the Department of Justice ("DOJ") that the FSA does not apply to defendants in cases pending at the time of the enactment as "absurd" and "obviously inconsistent with the purpose of the Fair Sentencing Act." Letter from Senators Dick Durbin and Patrick Leahy to Eric Holder at 1.

The Court is aware that Courts of Appeal, including the Eighth Circuit, have concluded that the FSA does not apply retroactively to defendants who were **sentenced** before its enactment. *See, e.g.*, *United States v. Smith*, No. 10-1266, 2011 WL 285056, at *3 (8th Cir. Jan. 31, 2011) ("[T]he 'general savings statute,' 1 U.S.C. § 109, requires us to

apply the penalties in place at the time the crime was committed.") (quoting *United States v. Brewer*, 624 F.3d 900, 909-10 n. 7 (8th Cir. 2010); *see also United States v. Bell*, 624 F.3d 803, 814-15 (7th Cir. 2010); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). In this case, however, Harris was not sentenced until after the FSA was enacted and the emergency amendments to the guidelines were in place. The Court finds this distinction determinative. As the *Douglas* court reasoned,

> Congress stated that its goal was to "restore fairness to Federal cocaine sentencing." Understandably, Congress might not have wanted a large volume of previously sentenced offenders to be released from prison immediately. But what possible reason could there be to want judges to **continue** to impose new sentences that are not "fair" over the next five years while the statute of limitations runs?

2010 WL 4260221, at *5 (emphasis original) (footnotes omitted) (quoting the FSA's Preamble).

Accordingly, many courts − including courts inside the Eighth Circuit − considering this precise issue have concluded that the post-FSA version of the statute applies. *See, e.g.*, *United States v. Hodges*, No. 1:10-CR-2, 2011 WL 611804, at *7-9 (M.D. Ga. Feb. 17, 2011); *Holland*, 2011 WL 98313, at *9-12; *United States v. English*, No. 3:10-CR-53, 2010 WL 5397288, at *2-3 (S.D. Iowa Dec. 30, 2010); *Douglas*, 2010 WL 4260221, at *4-6.[2]

The Court agrees with the reasoning of these courts, and concludes that application of the post-FSA version of § 841 and the guidelines in place at the time of

---

[2] Harris represents to the Court that the overwhelming majority of district courts considering the issue have agreed that the FSA should be applied to sentencings after August 3, 2010. The Court acknowledges, however, that numerous courts have reached the contrary conclusion. *See, e.g.*, *United States v. Lightfoot*, No. 3:10CR42-HEH, 2010 WL 5300890, at *2-4 (E.D. Va. Dec. 22, 2010).

Harris' sentencing comports with Congressional intent as well as fundamental fairness. "[I]t is either a 'necessary implication' or a 'fair implication' that, although retroactivity to those previously imprisoned might not be contemplated, the Fair Sentencing Act of 2010 permits no further federal crack sentencings that are not 'fair.'" *Douglas*, 2010 WL 4260221, at *6 (footnote omitted).

Accordingly, Harris is subject to a five-year mandatory minimum, not a ten-year mandatory minimum. Based on the criteria set forth in 18 U.S.C. § 3553(a), and for the reasons discussed during the sentencing hearing and in the Court's Statement of Reasons, the Court sentences Harris to a term of ninety months, a variance from the applicable guideline range.[3] The Court determines that a ninety-month sentence is sufficient but not greater than necessary to achieve the statutory sentencing objectives.

DATED:  March 25, 2011         _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                          United States District Judge

---

[3] At the sentencing hearing, the Court incorrectly stated Harris' guideline range based on the applicability of the pre-FSA § 841, the statutory maximum of which triggers a higher offense level under U.S.S.G. § 4B1.1. Harris' base offense level is twenty-four. Harris receives a three level reduction for acceptance of responsibility, but because he is a career offender subject to a statutory maximum of forty years, his adjusted offense level is thirty-one, and his total criminal history points are seven. Accordingly, Harris' guideline range is 188-235 months.